UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NY

In re:
STUDENT LOAN CARE, LLC,
                Debtor.

Chapter 11 Case No.:
20-22186 (RDD)

In re:
PROGRESS ADVOCATES, LLC,
                Debtor.

Chapter 11 Case No.:
20-22187 (RDD)

In re:
DEBT RESOLVE INC.,
                Debtor.

Chapter 11 Case No.:
20-22191 (RDD)

## **AFFIRMATIONUNDER LOCAL RULE 1007**

Anne Penachio, hereby affirms, as follows:

1. I am counsel for the above-referenced Debtors. I submit this affirmation in under Local Rule 1007. I have personal knowledge of the matters herein and reviewed them with the Debtors' representatives.

2. Debt Resolve, Inc. ("Debt Resolve") is software and service company trade incorporated in Delaware, with its principal place of business at 22 Saw Mill River, 2nd Floor, Hawthorne, New York. Its shares were at one time publicly trade. Its listing has been suspended due, in primary part, to the failure to provide updated audited financials.

3. Debt Resolve's sole business is offering Software-as-a-Service ("SAAS"), an on-line debt negotiation tool. Debtor Resolve offers the SAAS to debtor collectors (including both the underlying obligee and their assignees and agents). Debt Resolve's customers included hospitals, banks, and other institutions that want a

tool to facilitate more cost effective collections. Debt Resolve has not had customers since 2017. Debt Resolve has never serviced consumers.

4. Debt Resolve owns 51% of Progress Advocates, LLC ("Progress"). Until March, 2016, Progress was in the business of providing individuals with federal student Loan obligations document preparation services for re-payment programs offered by the U.S. Dept. of Education (the "DOE'). The DOE offers individuals who have federal student loan obligations income-based programs to reduce their monthly payments and possible total loan forgiveness after 10 or twenty years of payments.

5. Progress no longer operates.

6. Debt Resolve also owns 51% of Student Loan Care LLC ("SLC").

7. Like Progress, SLC was in the business of providing individuals with federal student loan obligations document preparation services for re-payment programs offered by the DOE.

8. SLC currently has limited operations as explained more fully below.

9. The primary distinction between SLC and Progress was how they acquired customers. SLC advertised through direct mail. The student loan obligor affirmative called SLC for more information. Progress directly contacted student loan obligors by telephone marketing. SLC helped the consumer identify the best program for them based on current income, dependents, and residence. For a fee, SLC helped the consumer complete and submit the application to DOE. After which, included in the initial fee, SLC helped the consumer prepare and submit annual re-certifications (3) to stay in the program.

10. SLC entered into an agreement with Equitable Acceptance Company ("Equitable") to allow Equitable to offer consumers financing ("Credit Plan") for the SLC fee. The arrangement allowed SLC to factor their accounts receivable ("Consumer Fees"). It also allowed the consumer to use SLC services for a low monthly payment ($42/month for 48 months).[1] By practice, SLC's clients reduced their federal loan payment by a

---

[1] Prior to the arrangement with Equitable, the consumer was required to pay SLC an initial fee of approximately $500.00

minimum of $100/month in the first year of the 20 year program. Equitable invoiced and collected the monthly payments from the consumer.

11. Equitable's initial consumer payment was to coincide with the consumer's acceptance into the DOE program and notification of the consumer's new reduced monthly payment. SLC provided on going customer support to the clients as well as, previously mentioned, consumer notification, new document collection and submission to DOE of their annual re-certification.

12. The Debtors' financial reverses were caused by variety of factors including: (i) general increased competition in market; (ii) a former partner taking employees and setting up a competing business; (iii) federal loan servicers attacking/disparaging the document preparation industry; (iv) regulatory actions commenced by the NY Attorney General; and (v) a lawsuit filed by a former landlord in CA.

13. The Debtors presently have little or no activity. SLC provides some customer support, but borrowers continue to deal directly with Equitable. Two customer service representatives and a manger remain on staff to address any consumer questions and assist with DOE documents.[2]

14. The Debtors' goal is to wind down operations in an orderly manner. Ideally, they would like to transfer any existing customers to another servicer, collect the balance due from Equitable, sell the Net Operating Loss, distribute duns to creditors and dissolve.

15. Other than the CA landlord and the NYAG, the Debtors' non-insider creditors are limited. A list was filed with the petition.

16. None of the Debtors' property is currently in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents, secured creditor or any agent for such entity.

---

and thereafter a ongoing monthly fee. Equitable essentially factored the upfront and monthly fees. Instead of paying SLC, the consumer paid Equitable directly.

[2] For example, a consumer may receive correspondence from the student loan servicer and have questions. SLC continues to address those questions. SLC stopped accepting in or about April 2019.

17. The Debtors' books and records are currently stored at its office in Hawthorne, NY.

18. Upon information and belief, there are no pending actions against the Debtors other than an action commenced by the NYAG and the CA Landlord.

Dated: White Plains, NY
March 10, 2020

/s/ Anne Penachio

_____

Anne Penachio